O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTIE M. RHODES, | ) | Case No. CV 11-5868-OP |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

The Court[1] now rules as follows with respect to the disputed issue listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

## I.
## **DISPUTED ISSUE**

As reflected in the Joint Stipulation, the sole disputed issue raised by Plaintiff as the ground for reversal and/or remand is whether the administrative law judge ("ALJ") properly considered Plaintiff's residual functional capacity ("RFC") for the mental demands of work. (JS at 4.)

## II.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## **DISCUSSION**

### A.  **The ALJ's Findings.**

Plaintiff, a thirteen-year veteran of the United States Air Force, applied for a closed period of disability from March 31, 2008, through December 1, 2009. (JS at 7; AR at 18.) Plaintiff served from February 4, 1995, through

1 March 31, 2008. (AR at 91, 107.)

2 The ALJ found that Plaintiff has the severe impairment of posttraumatic
3 stress disorder, with anxiety and depression. (AR at 18.) The ALJ further
4 found that Plaintiff had the RFC to perform a full range of work at all
5 exertional levels, with the nonexertional limitations of only simple, routine
6 tasks, and minimal public contact. (Id. at 21.)

7 Relying on the testimony of a vocational expert ("VE"), the ALJ
8 determined that Plaintiff was unable to perform her past relevant work of
9 pickup/delivery; logistic planner; and supply clerk. (Id. at 22.) The ALJ also
10 relied on the VE's testimony to determine that there were alternative
11 occupations Plaintiff could perform, such as laundry worker, grader, and sorter,
12 that exist in significant numbers in the national economy. (Id. at 23.)

**B.  The ALJ Properly Evaluated Plaintiff's Mental Impairment.**

On July 14, 2009, the non-examining physician, Nadine Kravatz, Psy.D., completed a Mental Residual Functional Capacity Assessment. (Id. at 197-99.) Plaintiff complains that the ALJ should have considered "the boundaries of what work settings Dr. Kravatz intended to preclude and give further consideration of the maximum residual functional capacity in light of the objective treatment record and the presence of medical improvement by December 1, 2009." (JS at 6-7.)

Specifically, Dr. Kravatz opined as follows:

> [Plaintiff] has adequate ability to sustain attention and concentration for simple work related tasks over the course of a normal workday and workweek. [She] would be able to relate to supervisors, coworkers and the general public. [She] would adapt to most changes in the work setting.

(AR at 199.) Plaintiff argues that although Dr. Kravatz opined that Plaintiff "could adapt to most work settings," this necessarily meant that there were

some to which she could not adapt. (Id.) The Court does not agree that this accurately reflects Dr. Kravatz' opinion, which actually stated that Plaintiff could adapt to most *changes* in a work setting. (Id.) Therefore, the Court does not find Plaintiff's arguments regarding the ALJ's failure to rely on or expand Dr. Kravatz' opinion to be persuasive.

Plaintiff goes on to review other treatment records: she cites to an April 7, 2009, report by Plaintiff's treating therapist, Janice Whitmore, MFT, who opined that Plaintiff suffered from a posttraumatic stress disorder and a major depressive disorder, and assessed a global assessment of functioning ("GAF") score of 52, with the best score in the preceding twelve months of 55. (Id. at 181.) Ms. Whitmore stated that "[Plaintiff] has limited ability to function using mental activities such as understanding and memory; sustained concentration and persistence; social interaction; and adaptation." (Id. at 182.) On March 31, 2009, based on a psychiatric consultation and March 27, 2009, psychological assessment, the VA Medical Center gave Plaintiff a preliminary diagnosis of posttraumatic stress disorder, depression not otherwise specified, and a GAF of 55. (Id. at 214, 216, 217-22.) On December 16, 2009, Dr. Gorrepati at the VA Medical Center, assessed Plaintiff as having fair[3] memory/concentration and fair insight/judgment. (Id. at 281.)

Plaintiff contends that from October 22, 2007,[4] through December 1, 2009, she had problems of impaired concentration, short term memory loss,

---

[3] Plaintiff argues that "fair" is term of art, and that it is only "one step above 'poor.'" (JS at 5-6.) She does not, however, provide any guidance to this Court as to what this means, if anything, in the context of Dr. Gorrepati's report. In any event, the Court does not see any valid issue here.

[4] Plaintiff refers to the onset date as October 22, 2007. However, at the time of the hearing, she amended her onset date to March 31, 2008, the date she left the Air Force. (AR at 30, 32, 91, 107.)

panic attacks, crying spells, irritability and difficulty sleeping. (JS at 6 (citing AR at 181, 216, 223)).) She alleges in a conclusory fashion that she could not have been expected to "transition directly into civilian li[f]e after return from Iraq in October 2007" and that two years "to achieve that end is reasonable." (Id.) She also claims that the ALJ's finding that Plaintiff needed to avoid the public and otherwise be limited to simple, routine tasks by October 2008, therefore, "is untenable" (id.) and that the "portrayal of Christie Rhodes as instantly well after two tours of duty and coming home with depression and post-traumatic stress disorder asks too much" (id. at 13). While the Court appreciates the difficulties that may be associated with returning to civilian life after a tour of duty in the armed forces, this simply is not the standard for assessing whether a claimant has a disability or whether an ALJ has arrived at a proper determination of disability.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas

v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). As with a treating physician, the controverted findings of an examining physician may only be rejected by the ALJ for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

In arriving at his RFC finding, the ALJ relied on several treating and non-treating sources, including the opinion of treating therapist, Ms. Whitmore.[5] (AR at 22-23.) The ALJ expressly discussed the findings of Ms. Whitmore, specifically her findings that Plaintiff had limitations relating to concentration and persistence, social interaction, and adaptation. (Id. at 22.) In "consideration of" Ms. Whitmore's opinion, he limited Plaintiff to simple, repetitive tasks, with minimal public contact, noting that Ms. Whitmore's conclusions did not "impose any limitations greater than those found in the [RFC]." (Id.) He also noted that there was "no statement or opinion by any

---

[5] In her Reply, Plaintiff notes that Defendant states the ALJ gave "controlling weight" to Ms. Whitmore's opinions. (JS at 12.) Plaintiff argues that as a therapist and, therefore, not an "acceptable medical source" under the regulations, Ms. Whitmore's opinion cannot be given "controlling weight." (Id.) In a series of somewhat convoluted arguments, she then goes on to argue that if the ALJ did give great weight to Ms. Whitmore's opinion, he made no allowance for the limitations in persistence and adaptation found by Ms. Whitmore. (Id. at 12-14.) The Court disagrees and finds that the ALJ's RFC properly took the limitations from a persuasive "other source," into account. 20 C.F.R. § 404.1513(d) (therapist is an "other" medical source and the ALJ may use evidence from other sources to show severity of an impairment and how it affects the plaintiff's ability to work). Moreover, the ALJ specifically noted there was no statement or opinion by any *acceptable medical treating source* that limited Plaintiff's ability to work – thus, he gave Plaintiff the benefit of the doubt in giving any weight at all to Ms. Whitmore's limiting opinions.

acceptable medical treating source limiting [Plaintiff's] ability to work." (Id.)

The ALJ also considered the fact that in March 2009 Plaintiff reported to her psychologist that she had worked for six months after leaving the Air Force and was affiliated at that time with a temporary agency but had not found a job because of the economy. (Id.) He considered the statements of Plaintiff's friend, Anna Zaragoza, noting that Plaintiff helps get her friend's children ready for school each day, cooks and cleans, picks the children up at school, and helps them with their homework. (Id.) He noted that although Ms. Zaragoza stated Plaintiff panics around large crowds, Ms. Zaragoza also reported that Plaintiff is able to go shopping for groceries and clothes. (Id.) The ALJ remarked on the fact that Plaintiff alleged two suicide attempts but the fact that nothing in the record supported these incidents, "seriously diminish[ing] the credibility of these allegations." (Id.) The ALJ noted that Plaintiff's treating psychiatrist also found Plaintiff to be "questionably reliable" as an informant. (Id. (citation omitted).)

The ALJ also discussed the March 2008 report from treating clinical psychologist, Jared A. Detter, who noted that Plaintiff "reported on her treatment with her civilian provider, Dr. Smith, saying how much better she was in all aspects of life." (Id. (citing id. at 173).) Dr. Detter noted Plaintiff had made significant improvement, that she had good energy, and was very hopeful about the future. (Id.) He found her to be "world wide qualified," clearing her for duty in the reserves. (Id. at 18, 173.) The ALJ also commented on the March 12, 2009, assessment of a physician who recommended a non-urgent mental health evaluation, and several sessions with psychiatrist, Diana M. Tracy, M.D., who regularly reported that although Plaintiff described herself as "shut-down" or "remote," and "not talkative," these labels were often belied during the session where Plaintiff would become "hyperverbal," "actively involved in describing her symptoms," or "became talkative as the

1 | appointment progressed." (Id. at 19 (citations omitted).)

2 | In short, there was substantial evidence of record to support the ALJ's
3 | RFC finding and whatever limitations Plaintiff believes were present in the
4 | report of non-treating MFT Ms. Kravatz. In the end, it is Plaintiff's burden to
5 | prove disability, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), and
6 | Plaintiff has failed to prove that she was incapable of performing the jobs
7 | identified by the ALJ.

8 | Based on the foregoing, the Court finds the ALJ properly assessed
9 | Plaintiff's mental impairment and RFC. Thus, there was no error.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: March 7, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge